**FILED**

Jan 28 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ CharityW          DEPUTY

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**E. DRAKE**                     **CASE NUMBER:**   **'19 CV 0192 CAB WVG**

                 *Plaintiff*

**VS**

**GALLAGHER BASSETT SERVICES, INC.,**
**PAPYRUS RECYCLED GREETINGS, INC.,**
**AND SCHURMAN FINE PAPERS INC.**

                *Defendant*

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

      COME NOW, E.V. Drake, hereinafter referred to as "Plaintiff" or "Drake" and brings this action against the above Defendants as alleged herein.

### I.  JURISDICTION AND VENUE

      1.     This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. §§ 1981, 1983. Plaintiff brings suit under 42 U.S.C. § 1981, claims is conferred by §1343.

      2.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

      3.     This Court has authority to grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57. This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

4.      The Court has jurisdiction over Defendant Gallagher Bassett Service Inc, hereon Gallagher Bassett, Papyrus Greeting Inc, hereon Papyrus, and Schurman Fine Papers Inc, hereon Schurman, because a corporation is deemed to reside in any juridical district where it is subject to personal jurisdiction at the time the action is commenced. 28 USC §1391(c), *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1210 n.3 (10th Cir.2000).

5.      Venue is also proper in the judicial district where corporation is doing business. Gallagher Bassett, Papyrus, and Schurman are all doing business in San Diego, California. Papyrus is headquartered in California. 15 Wright, Miller & Cooper §3811. (28 U.S.C. § 1391(b)). Subsequently, Gallagher Bassett, Papyrus, and Schurman have sufficient contacts in the state of California for this Court to have personal jurisdiction over the above defendants. *Langton v. Cheyond Comm., LLLC.* This litigation is a diversity action and asks a federal question.

7.      Plaintiff invokes this Court's jurisdiction of this action also under, 15 USC §2301, 28 U.S.C. § 1331, §1332, §1343. And supplemental jurisdiction under 28 U.S.C. § 1367, over state law violations. When federal jurisdiction is founded upon diversity of citizenship under 28 U.S.C.S. § 1332, the district court is bound to apply state substantive law to plaintiff's claims. Plaintiff pleads supplemental jurisdiction under 28 U.S.C. § 1367, over state law claims. Uniform Commercial Code §2-314, 2-315.

8.      This Court has jurisdiction pursuant to 28 U.S.C § 1332 because the amount in controversy exceeds $75, 000.00, exclusive of interest and costs, and Plaintiff and Defendants are citizens of different states, creating diversity of jurisdiction.

9.      Plaintiff invokes the Court's jurisdiction of this action under USC § 1331, 1332. Plaintiff claims federal jurisdiction pursuant to Article III § 2, which extends the jurisdiction to cases arising under the U.S. Constitution.

2

10.     Jurisdiction is also allowed in the above cause of action pursuant to 28 USC §1981 and §1983 claims that the Plaintiff is making against Defendants. Sedgwick shall also be referenced as "Defendant."

11.     This Court has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

12.     Plaintiff pleads supplemental jurisdiction under 28 U.S.C. § 1367, over state law claims. Federal Trade Commission Act (FTC Act) (15 USC §45) Section 5, [5(a)].

13.     The amount of controversy exceeds ($75,000.00), exclusive of interest and costs. Plaintiff invokes the Court's jurisdiction of this action under the Civil Rights Act of 1991, 42 USC §1981; 42 U.S.C. § 1985, §1988, and 1928 USC § 1331, 1343, 18 U.S.C. 1961—1968. Title 42 U.S. Code § 1983, Plaintiff claims federal jurisdiction pursuant to Article III § 2, which extends the jurisdiction to cases arising under the U.S. Constitution. This Court also has jurisdiction to 28 U.S.C. §1331, 1343(a), 28 U.S.C. §2201, 42 U.S.C. §1983, 42 U.S.C. 1988, 42 U.S.C. §1981, Civil Rights Act of 1871, 42 U.S.C. §1985, 42 U.S.C. §1986. Jurisdiction is also conferred by 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States.

## II.  FACTUAL BACKGROUND

14.     Plaintiff is a citizen of the United States. He is free to bring suits to resolve civil disputes. The Plaintiff is of a protective class, "African American." Such liberty interests are protected and guaranteed to Plaintiff by the Fourteenth Amendment to the United States Constitution and by other federal statutes.

15.     This lawsuit derives from an injury to the Plaintiffs eyes on or about December 24, 2017. The Plaintiff purchased from a Whole Food Market, gift-wrapping paper, which was manufactured by Defendants Papyrus. The gift-wrapping paper incorporated glitter on it. Unknowingly to the Plaintiff, the glitter came off the paper quickly covering the table he was working on, his clothes, and his hands. Not noticing the glitter on the Plaintiffs hands, he got glitter into his face and eyes.

16.     The Plaintiff sought medical treatment at a local emergency room hospital for the glitter in his eyes on December 26, 2017.

17.     Plaintiff reported the incident to Whole Foods Market (hereon referenced as Whole Foods or WFM) manager, Russell Husted. Mr. Husted took a statement from the Plaintiff and assured him that Whole Foods would compensate him for his injuries.

18.     Liability was clear; because the wrapping paper manufactured by Defendants Papyrus had no warning signs on the paper to be careful that glitter would come off the gift-wrapping paper or a notice alerting consumers to be careful with the wrapping gift paper. However, in this case, the glitter came off the wrapping paper very easily covering the table Drake was working on, and the Plaintiffs clothes and hands.

19.     Plaintiff have handled other products that employ glitter, but the wrapping paper manufactured by Defendants Papyrus covered the Plaintiffs hands, and the product was difficult to remove from Plaintiffs hands even after repeated washing.

4

20.     After reporting the incident to Whole Foods, the Plaintiff was contacted by Gallagher Bassett's adjuster/claims handler and or employee by the name of Tom Hinrichsen. Mr. Hinrichsen was difficult to work with and through several emails even after months, the negotiations and or settlement did not resolve the case. However the Plaintiff tried to find a means to settle the case.

21.     Plaintiff made contact with Russell Husted again the week of January 7, 2019. Mr. Husted advised the Plaintiff that he would not get involved in the case regarding any settlements, and referred the Plaintiffs claims back to Gallagher Bassett.

22.     On January 15, 2019 Tom Hinrichsen at Gallagher Bassett contacted the Plaintiff. Tom offered an incredibly small settlement to settle the Plaintiffs case. In addition, Mr. Hinrichsen attempted to restrict the Plaintiffs ability to take legal action and file suit if a problem aroused after the agreement was signed. At this, the Plaintiff felt that Gallagher Bassett had violated his constitutional rights.

23.     It is one thing to offer a small settlement regarding the client that Gallagher Bassett is representing, Whole Foods, but to demand that the Plaintiff accept such a low figure for companies that Gallagher Bassett does not represent is a violation of the Plaintiffs rights to seek proper compensation from all and any parties who have harmed him pursuant to the incident described herein. Mr. Hinrichsen also further violated the Plaintiffs rights by stating that Drake had to agree to have any disputes settled in a state court in Travis County, restricting Plaintiff from filing in federal courts.

24.     Mr. Hinrichsen did not employ Travis county in his release by chance. In 2014, the Plaintiff was declared as a vexatious litigant by the perjured testimony of an assistant Attorney General in Travis County. The judge who granted the Attorney

5

General's motion was appointed by an employee of the court who claimed to be a judge, who wasn't a judge, which is another felony crime.

25.     As said, Mr. Hinrichsen release stated the Plaintiff could not file any disputes in federal court. See Gallagher Bassett Release annexed as **Exhibit 1**. This was also by design of Gallagher Bassett to employ a means to harm the Plaintiff and restrict him to have access to all courts in violation of the Plaintiffs constitutional rights.

26.     Unquestionably, Mr. Hinrichsen is fully aware of the Plaintiffs race, African American, and the Plaintiffs involvement with Travis County. Mr. Hinrichsen actions barred the Plaintiff from access to the federal courts, which is a serious violation of the Plaintiffs rights as pled herein. Gallagher Bassett shall be referred to also as, "GB."

### FIRST CAUSE OF ACTION

**COUNT 1.     NEGLIGENCE AND GROSS NEGLIGENCE
AS TO DEFENDANT GALLAGHER BASSETT**

27.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

28.     This lawsuit derives from an injury to the Plaintiffs eyes that occurred on December 24, 2017. The Plaintiff purchased from a Whole Food Market gift-wrapping paper to wrap Christmas gifts. The gift-wrapping paper was manufactured to incorporate glitter on it. Unknowingly to the Plaintiff, the glitter came off the gift-wrapping paper quickly covering his pants, shirt, and hands.  Without noticing the glitter on the Plaintiffs hands, he got glitter into his face and eyes.

6

29.     Gallagher Bassett through its employees attempted to deprive the Plaintiff of his rights to access to all courts available to him as a citizen of the United States. Tom Hinrichsen also included parties to the settlement agreement, which on information and belief that had no contract with Gallagher Bassett to settle their liability in the Plaintiff claim that is made the basis of this lawsuit. Therefore, if Gallagher Bassett had no authority to settle Defendant Schurman, in all probability it had no legal authority to settle Defendant Papyrus. Thus, Gallagher Bassett was defrauding the Plaintiff and violating his rights, which Gallagher Bassett is guilty of negligence and gross negligence.

30.     Plaintiff damages against GALLAGHER BASSETT for such actions exceed $75,000.00. Gallagher Bassett sought to restrict the Plaintiff access to the courts, to force the Plaintiff file in just one particular state court. The settlement agreement annexed as Exhibit 1 is grossly unfair to the Plaintiffs rights and the proposed settlement agreement was meant to hinder the Plaintiffs access to the courts, and stifle his constitutional rights.

31.     As a direct and proximate result of the injury caused to the Plaintiff by GALLAGHER BASSETT, Drake is requesting the following:

a).     A declaration that Defendant GALLAGHER BASSETT caused the injury made the basis of this lawsuit and set forth herein and that Plaintiff is legally entitled to receive damages from Defendant GALLAGHER BASSETT;

b).     A declaration of the amount of damages sustained by Plaintiff by and through Gallagher Bassett to include the following:

i)      Mental anguish sustained in the past;

7

ii)    Mental anguish that will, in reasonable probability, be sustained in the future;

iii)    Pre-judgment interest at the highest rate allowed by law; and

iv)    Post-judgment interest at the highest rate allowed by law.

v)    An award of attorney's fees, taxable court costs and expenses of litigation to Plaintiff for the prosecution of this matter.

32.    GALLAGHER BASSETT through its employees, and representatives, used unethical tactics to try and deny the Plaintiff just compensation against companies that Gallagher Bassett apparently did not represent or have a contract with to resolve their liability regarding the glitter incident made basis of this litigation. Gallagher Bassett also sought to deny the Plaintiff access to federal courts, violating Plaintiffs constitutional rights to access to the courts and a violation of Plaintiffs free speech. GALLAGHER BASSETT through its employees, representatives, knowingly used unethical tactics to try and deny the Plaintiffs claims against other companies that were liable to the Plaintiff claims regarding the glitter incident under color of law.

33.    As pled, the actions of GALLAGHER BASSETT through its employees, and representatives, indeed were to also prevent the Plaintiff access to federal and other courts, which effectively prevented Drake from filing suit in violation of 42 USC §1981.

34.    Defendant GALLAGHER BASSETT through its employees, representatives, its employees, and agents were negligent in one or more of the following negligent acts and/or omissions:

1).    GALLAGHER BASSETT failing to use reasonable care and fairness in handling and representing Whole Foods Market;

2).    Gallagher Bassett's failure to take adequate precautions to reasonably settle the Plaintiffs claims against Whole Food Market;

3).    Gallagher Bassett's failure to properly train, supervise and/or instruct employees on proper and ethical way to settle claims, however, Tom Hinrichsen is a senior level claims handler with Gallagher Bassett, so his actions were intentional with malice. Therefore, his conduct was deliberate to deprive the Plaintiff of his rights;

4).    Gallagher Bassett's failure to employ proper settlement procedures by employing closer supervision of its employees which was negligent;

6).    Gallagher Bassett's failure to act as a reasonably prudent company would in a similar circumstance;

4).    Gallagher Bassett's failure to provide, and maintain an adequate program with instruction material for the employees code of conduct and ethics and how to treat people who are not represented and of a racial group.

35.    Plaintiff is entitled to compensation as a result of GALLAGHER BASSETT representatives, and or negligence.

36.    Moreover, the principle of *res ipsa loquitur* applies in the Plaintiff claim against Defendant GALLAGHER BASSETT representatives and employees negligence causing the Plaintiff damages. Plaintiff is entitled to the doctrine of *res ipsa loquitur* "if the evidence affords a rational basis upon which the jury can conclude that the elements of the doctrine required under state substantive law are present." *Id*.

37.    Each of these acts and omissions by GALLAGHER BASSETT representatives, and employees singularly or in combination with others, constituted negligence, which proximately caused Plaintiff's damages. Plaintiff has suffered greatly and asks this Court for Exemplary damages against GALLAGHER BASSETT representatives, and employees as well as interest, and court cost.

38.    WHEREFORE, Plaintiff, Drake seeks a judgment against GALLAGHER BASSETT representatives, and employees together with interest for damages, costs and for such other and further relief as this Court deems proper.

## SECOND CAUSE OF ACTION

**COUNT 2.** **EXEMPLARY DAMAGES AND VICARIOUS LIABILITY AS TO DEFENDANT GALLAGHER BASSETT**

39.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

40.    Plaintiffs injuries resulted from Defendant GALLAGHER BASSETT representatives, partners, and or counsel gross negligence, which entitles Plaintiff to exemplary damages.

41.    GALLAGHER BASSETT committed actual malice, and negligence, which entitles Plaintiff to exemplary damages under California State Codes. Plaintiffs injuries resulted from Defendant GALLAGHER BASSETT and its employees gross negligence, malice and the Plaintiff is entitled to exemplary damages as authorized by California State Codes. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296–297 [48 Cal.Rptr.2d 510, 907 P.2d 358]

## THIRD CAUSE OF ACTION

**COUNT 3.** **VICARIOUS LIABILITY PRINCIPAL-AGENT LIABILITY-ACTUAL AUTHORITY AS TO GALLAGHER BASSETT**

42.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

43.    Tom Hinrichsen has actual authority to act on behalf of GALLAGHER BASSETT, but not on behalf of SCHURMAN FINE PAPERS INC that are liable to Drake.

44.     GALLAGHER BASSETT used unethical tactics to prevent the Plaintiff from obtaining just compensation from any and all parties who are liable for his injuries through any court that is available to the Plaintiff, and as a result of the glitter incident, which made basis for this litigation. Thus, Gallagher Bassett through its employees and agents violated California State Codes. (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1178 [201].

**COUNT 4**
## FOURTH CAUSE OF ACTION
## RACE DSCRIMINATION AS TO GALLAGHER BASSETT

45.     Plaintiff would show that he was the victim of unlawful practices based on his race (Black) or (African American) and because of his race the Defendant GALLAGHER BASSETT discriminated against him, as specifically set forth below:

a.     Plaintiff is a Black male.

b.     GALLAGHER BASSETT was hired to represent Whole Food Market in the evident a claim aroused in one of Whole Foods 460 stores nationwide.

c.     GALLAGHER BASSETT agent conspired to prevent the Plaintiff from obtaining just compensation for his damages he incurred regarding gift-wrapping paper manufactured by Papyrus that the Plaintiff purchased from a Whole Food store. GALLAGHER BASSETT employee and or representatives demanded that the Plaintiff sign a settlement contract where he would not be able to file suit in a federal court, which violated Plaintiffs rights pursuant to 42USC §1981.

d.     GALLAGHER BASSETT through its employees and representatives knowingly violated the Plaintiffs constitutional rights.

e.   The reckless, but intentional actions of GALLAGHER BASSETT through its employees and representative can be easily seen by a jury as intent to injure the Plaintiff, to prevent him from receiving just compensation for all of the Plaintiffs claims against all parties that are liable for his injuries.

f.   This type of behavior demands punitive and exemplary damages.

## FIFTH CAUSE OF ACTION

**COUNT 5.    RESPONDEAT SUPERIOR AS TO
DEFENDANT GALLAGHER BASSETT**

46.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

47.    When viewed objectively, Defendant Gallagher Bassett conduct, acts and/or omissions described above involved an unspeakable act to take advantage of the Plaintiff, considering the probability and magnitude of potential harm to others. Defendant Gallagher Bassett employees and representative had actual, subjective awareness that Gallagher Bassett had no right to force the Plaintiff to give up his constitutional rights to file suit in any court he desires for relief. "Respondeat superior is based on a 'deeply rooted sentiment' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208 [285 Cal.Rptr. 99, 814 P.2d 1341].

48.    Defendant GALLAGHER BASSETT conduct rises to the level of gross negligence. Accordingly, Plaintiff is entitled to a finding that Defendant GALLAGHER BASSETT, its agents, and representatives were grossly negligent regarding their demands upon the Plaintiff to abandon his rights to sue, file suits in any court, state or federal.

12

49.    Plaintiff would further show that Tom Hinrichsen, an employee of GALLAGHER BASSETT actually knew that his actions against the Plaintiff were in violation of the Plaintiffs constitutional rights, but Mr. Hinrichsen treatment of the Plaintiff was strictly on account of his race, African American. Tom Hinrichsen, a white employee of GALLAGHER BASSETT was acting within the course and scope of his employment and in the furtherance of the business interest and pursuits of said Defendant GALLAGHER BASSETT. In this regard, Plaintiff alleges and contends that each negligent act and/or omission on the part of Mr. Hinrichsen employee of GALLAGHER BASSETT is imputed to GALLAGHER BASSETT. Defendant GALLAGHER BASSETT is vicariously liable for all negligent and grossly negligent acts and/or omissions alleged herein to have been perpetrated by its employees.

### SIXTH CAUSE OF ACTION
### EQUAL PROTECTION — 42 USC § 1983

**COUNT 6.**    **EQUAL PROTECTION VIOLATIONS AS TO DEFENDANT GALLAGHER BASSETT**

50.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

51.    The acts committed by Defendant GALLAGHER BASSETT and its employees and agents, deprived the Plaintiff Drake, a member of a racial minority, of the rights, privileges and immunities guaranteed to citizens of the U.S. of the Fourteenth Amendment to the U.S. Constitution.

13

52.     Defendant Gallagher Bassett denied Plaintiff an equal opportunity to have his claim for personal injuries considered and settled like white citizens claims are settled. Gallagher Bassett also sought to deprive the Plaintiff access to any court to correct wrongful actions. This characterization negated any hope for the Plaintiff to receive a fair and just settlement from Defendant GALLAGHER BASSETT, who was employed by Whole Foods Market to investigate and settle their claims.

53.     Defendant GALLAGHER BASSETT failed even to attempt to evaluate the Plaintiffs claim for personal injuries in any meaningful manner. Therefore, Plaintiff believes that GALLAGHER BASSETT conduct was based strictly on his race, African American.

54.     Plaintiff's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution were violated by the conduct of GALLAGHER BASSETT and its employees as pled herein.

55.     Plaintiff has a cause of action for violation of his constitutional right to equal protection, under the Civil Rights Act, 42 U.S.C. § 1983.

### SEVENTH CAUSE OF ACTION
### DEPRIVATION OF RIGHTS UNDER — 42 USC § 1981

**COUNT 7.**     **DEPRIVATION OF PLAINTIFFS RIGHTS
AS TO DEFENDANT GALLAGHER BASSETT**

56.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

14

57.     The acts committed by the Defendant GALLAGHER BASSETT, its employees, agents and representatives as pled herein deprived Plaintiff Drake, a member of a racial minority, of the rights, privileges and immunities guaranteed to citizens of the United States in violation of 42 USC §§ 1981 and the 14th Amendment.

58.     The acts complained of were carried out by the aforementioned individual who is an employee and or representative of Defendant Gallagher Bassett to deprive the Plaintiff of his right to access to all courts of law. Defendant GALLAGHER BASSETT also deprived the Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. Defendant GALLAGHER BASSETT has a contractual obligation to treat all claimants the same with respect and not attempt to prevent a claimant from receiving the full amount due to them as GALLAGHER BASSETT carried out against the Plaintiff.

59.     It would appear that once Defendant GALLAGHER BASSETT began its investigation, that their role was to interfere with the Plaintiffs constitutional rights by preventing the Plaintiff from enjoying the right to sue and make and enforce contracts in violation of §1981 and Gallagher Bassett violated the Plaintiffs Fourteenth Amendment rights. On information and belief, Defendant SCHURMAN FINE PAPERS INC. owns Defendant Papyrus. In Gallagher Bassett's release, Exh. 1, Papyrus is listed, however, since Schurman Fine Paper, Inc., owns Papyrus, unless Gallagher Bassett have a contract with Schurman Fine Papers Inc to settle and manger their claims, Gallagher Bassett interfered with the Plaintiffs constitutional rights by forcing the Plaintiff into a settlement agreement which would prevent the Plaintiff from receiving just compensation from companies that Gallagher Bassett does not even represent or have a contract with to settle their claims, and to prevent the Plaintiff from enjoying the right to sue and make and enforce contracts in violation of §1981 and Gallagher Bassett violated the Plaintiffs Fourteenth Amendment rights.

15

60.     Pursuant to §1981, Plaintiff has every right to make and enforce contracts, to sue be parties, give evidence, and to the full and equal benefit of all law, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 USC §1981 also protects against impairment by nongovernmental discrimination.

61.     Thus, Defendant GALLAGHER BASSETT desired to nullify the Plaintiffs constitutional rights and his ability to have access to all courts was purposely derived to harm the Plaintiff. All of this was to deprive the Plaintiff of a just compensation from any and all liable parties that contributed to his injuries, which made the basis of this litigation. Whole Foods also has a contractual obligation with the Plaintiff or any person who is injured by a product it sells or markets. The actions complained of in this petition are not those of Whole Food, but strictly of Gallagher Bassett.

## EIGHTH CAUSE OF ACTION

## COUNT 8.     MALICE AS TO DEFENDANT GALLAGHER BASSETT

62.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

63.     Plaintiff further alleges that Defendant GALLAGHER BASSETT by and through its acts and/or omissions, and through the acts and/or omissions of its employee, as set out and plead herein, exceeded the test for negligence and committed acts and/or omissions of gross negligence that amounted to more than momentary thoughtlessness, inadvertence or error of judgment. Plaintiff alleges that said acts and/or omissions amounted to such an entire want of care as to establish that the act or omission was the

result of actual conscious indifference to the rights of the Plaintiff who is of a protective class of person. Plaintiff further alleges that the Defendant GALLAGHER BASSETT acts and/or omissions of gross negligence created an extreme degree of risk to Plaintiff claims against all parties of which were liable to the Plaintiff for the injuries he sustained as a result of the glitter gift-wrapping paper. The risk to the Plaintiff is associated with the fact that GALLAGHER BASSETT did not see the Plaintiff as a person, but a black person, who their employee believed that the Plaintiff could be forced into signing away his full rights as a citizen of the United States against companies that GALLAGHER BASSETT did not represent. GALLAGHER BASSETT carried out this racially motivated, unfair, and bias plan against the Plaintiff, because he is of a protective class of person, but also possibly a means to possibly demonstrate to the paper company, Papyrus that they should also hire GALLAGHER BASSETT to settle their claims.

64.    Plaintiff further alleges that the Defendant GALLAGHER BASSETT had actual subjective awareness of the fact that by demanding for the Plaintiff to give up his rights to file suit in federal courts was a constitutional violation of the Plaintiffs rights. These were clear constitutional violations of Plaintiffs rights but, nevertheless, proceeded with conscious indifference to the rights, and welfare of the Plaintiff on account of his race, African American. In this regard, Plaintiff seeks exemplary damages.

## NINTH CAUSE OF ACTION

**COUNT 9.   AS-APPLIED VIOLATION OF PLAINTIFF'S RIGHT TO FREE SPEECH UNDER THE FIRST AND FOURTEENTH AMENDMENTS (42 USC §1983) AS TO DEFENDANT GALLAGHER BASSETT**

65.   Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

66.   The First and Fourteenth Amendments extend to circumstances where a person, entity, or company desires to limit or restrict these constitutional amendments.

67.   By attempting to restrict or limit the Plaintiffs' ability to file suit in any court in the United States, which is a lawful activity Defendant Gallagher Bassett have explicitly and implicitly chilled Plaintiffs' free expression and free speech, and have deprived Plaintiff of his clearly established rights to freedom of speech and expression secured by the First and Fourteenth Amendments to the Constitution of the United States. Defendant Gallagher Bassett through its employees, agents, and representatives violated a clearly established constitutional right of which these agents should have known, rendering Gallagher Bassett liable to Plaintiff Drake under 42 U.S.C. § 1983.

68.   The denial of constitutional rights is irreparable injury *per se*, and Plaintiff Drake is entitled to declaratory and injunctive relief. As a consequence of being denied his First Amendment rights, including but not limited to have access to federal courts, Plaintiffs experienced significant emotional pain and anguish.

69.   Plaintiff is entitled to a declaration that Defendant Gallagher Bassett violated their First Amendment rights. Additionally, Plaintiff is entitled to damages in an

amount to be determined by the evidence and this Court, and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## TENTH CAUSE OF ACTION

**COUNT 10.**  **FACIAL CHALLENGE TO VIOLATION OF RIGHT TO FREE SPEECH UNDER THE FIRST AND FOURTEENTH AMENDMENTS (42 USC §1983) AS TO DEFENDANT GALLAGHER BASSETT**

70.     Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

71.     In 2014, (Travis County) the only court that Defendant Gallagher Bassett in its settlement agreement allows Plaintiff to file any litigation just happens to be the County where a assistant Attorney General and a court employee conspired to determine the Plaintiff as a vexatious litigant. The assistant Attorney General committed perjury under oath and the court employee, who wasn't a judge, appointed another judge to hear the case. The idea was to force the Plaintiff into a court, which has already committed felony crimes against him. The Plaintiff have a First Amendment right to engage in expressive activities and filing lawsuits without obtaining advance permission from government officials—except where state authorities have committed crimes to circumvent this privilege and Defendant Gallagher Bassett desires to capitalize on that infringement.

72.     Further, the Texas vexatious litigant is a state injunction and case law clearly specifies that it cannot prevent a party from filing in federal court, yet this was the

intend of Defendant Gallagher Bassett. A permitting requirement is a prior restraint on speech and therefore bears a heavy presumption against its constitutionality. *Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009). The presumptive invalidity and offensiveness of advance notice and permitting requirements stem from the significant burden they place on free speech.

73.    U.S. citizen's ability to file lawsuits and argue their cases is free speech. Defendant Gallagher Bassett aim was to place unconstitutional prior restraints on Plaintiffs First Amendment rights. Therefore, the Plaintiff will continue to be, irreparably injured in that he have been, and will be, deprived of his right to free speech under the First and Fourteenth Amendments to the Constitution.

74.    Defendant Gallagher Bassett's desire was to force the Plaintiff into a bargain of his constitutional rights of free speech whereas he would receive an incredibly small of money in bargaining for the violation of his free speech and rights of 42 USC §1981, which also a clear violation of his access to all courts.

75.    As a consequence of the Defendants' violation of the Plaintiff First and Fourteenth Amendment rights, Plaintiff is entitled to injunctive relief, and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## ELEVENTH CAUSE OF ACTION

**COUNT 11.    FACIAL CHALLENGE TO VIOLATION OF RIGHT TO FREE
SPEECH UNDER THE FIRST AND FOURTEENTH AMEND-
MENTS (42 USC §1983) OVERBREADTH AS TO DEFENDANT
GALLAGHER BASSETT**

76.    Plaintiff incorporates by reference all preceding paragraphs and
allegations as if fully set forth herein.

77.    Gallagher Bassett bears the burden of justifying any regulation of
expressive activity in the courts, where the settlement agreement as seen in **Exhibit 1**,
expressly targets Plaintiffs ability to exercise free speech. Any restrictions on speech in
our judicial courts must serve a substantial public interest and must be narrowly tailored
and applied so as not to burden more speech than is essential.

78.    Even purportedly neutral regulations, such as time, place, or manner
restrictions, must be narrowly tailored and must not burden more speech than necessary
to achieve a substantial governmental interest. In the case at bar, Gallagher Bassett
cannot identify a substantial governmental interest to served by prohibiting the Plaintiff
from having access to federal and other state courts, as its settlement agreement demands.

79.    The settlement agreement that Gallagher Bassett wrote and served upon
the Plaintiff violate First Amendment protected speech, as the Plaintiff have that right as
a U.S. citizen in all courts, which makes Gallagher Bassett's settlement agreement
unconstitutionally overbroad because it does not serve a significant governmental
interest, is not narrowly drawn, and impermissibly restricts the Plaintiff access to all
courts in the United States, except one court that have committed actual crimes against

21

the Plaintiff was contrived knowingly and intentionally.

80.    The bargain that Gallagher Bassett demanded that the Plaintiff take by and through its settlement agreement in **Exhibit 1**, restricts Plaintiff's speech in all courts which burden far more speech than being narrowly tailored to protect speech as the Constitution requires, the Whole Foods, Amazon and all companies that Gallagher Bassett represents is also in violation of Gallagher Bassett's excessive power to preclude speech. Thus, Plaintiff is deprived of their right to free speech under the First and Fourteenth Amendments to the Constitution.

81.    As a legal consequence of the Defendant Gallagher Bassett violation of Plaintiff's First and Fourteenth Amendment rights, as alleged above, Plaintiff is entitled to injunctive relief, and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## TWELFTH CAUSE OF ACTION

**COUNT 12.    FACIAL CHALLENGE TO VIOLATION OF RIGHT TO FREE SPEECH UNDER THE FIRST AND FOURTEENTH AMEND- MENTS (42 USC §1983) VAGUENESS AS TO DEFENDANT GALLAGHER BASSETT**

82.    Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

83.    A state enactment is void for vagueness if the prohibitive terms are not clearly defined such that a person or ordinary intelligence can readily identify the applicable standard for inclusion and exclusion. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

83.     Defendant Gallagher Bassett settlement agreement referenced in **Exhibit 1**, restricting speech fail adequately to advise the Plaintiff why the settlement agreement was restricting the Plaintiff access to federal courts and any other state courts in Texas, subsequently the settlement agreement is unconstitutionally vague on its face in violation of the First Amendment and of the due process guarantee of the Fourteenth Amendment to the U.S. Constitution.

84.     Vague and undefined policies also vest the public officials who must enforce them with unbridled discretion that may be exercised in an inconsistent or discriminatory manner.

85.     Since Defendant Gallagher Bassett does not provide any logical or legal reasons for restricting the Plaintiff to but just one court in its settlement agreement as set forth herein, Gallagher Bassett policies or its settlement agreement itself do not provide standards to guide the discretion of any courts that would review the settlement agreement, whether the settlement agreement apply to particular acts of access to all courts. This empowers such any court reviewing the settlement agreement to administer the wrongful prohibition of Plaintiffs access to all courts through an arbitrary application. In other words, the probation against the Plaintiff have no reasoning or guidelines for any court to follow or understand why have Defendant Gallagher Bassett included this probation in its agreement.

86.     Because of Defendant Gallagher Bassett's policies and actions against the Plaintiff on account of his race, African American, Plaintiffs have suffered, and continue to suffer irreparable harm. Plaintiff is therefore entitled to injunctive relief, and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## THIRTEENTH CAUSE OF ACTION

**COUNT 13. DECLARATORY JUDGMENT AND INJUNCTION
(28 USC §2201, et seq.) AS TO GALLAGHER BASSETT**

87.     Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

88.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time as to Counts IX through XII above.

89.     Plaintiffs desire a judicial determination of his rights against Defendant Gallagher Bassett as they pertain to Plaintiffs' right to speak, and have access to all judicial courts without being subjected to a prior restraint or "to the court or the County" regulations that are unreasonable, that are not narrowly tailored to serve a substantial governmental interest, and violates the Plaintiffs rights as pled herein.

90.     To prevent further violation of Plaintiffs' constitutional rights by Defendant Gallagher Bassett, it is appropriate and proper that a declaratory judgment issue, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring that Gallagher Bassett's actions against the Plaintiff is unconstitutional.

91.     Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that this Court issue a permanent injunction prohibiting Defendant Gallagher Bassett from its restrictions on Plaintiff's access to all judicial courts to the extent that those restrictions are unconstitutional, and to prevent the ongoing violation of Plaintiffs' constitutional rights. Plaintiff is suffering irreparable harm from Gallagher Bassett's unconstitutional policies contained in its settlement agreement, monetary damages are inadequate to remedy their harm, and the balance of equities and public interest both favor a grant of injunctive relief.

**FOURTEENTH CAUSE OF ACTION**

**COUNT 14.   STRICT PRODUCTS LIABILITY AGAINST DEFENDANT PAPYRUS AND SCHURMAN DESIGN DEFECT**

92.     Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

93.     At all times material to this action, the Defendants Papyrus and Schurman are retailers of paper and greeting card products are responsible for the injuries that the Plaintiff sustained as pled herein. Defendants Papyrus and Schurman operate over 40 (Forty) stores throughout the state of California. Defendants Papyrus and Schurman operate over 4 stores in San Diego, California.

94.     Defendants Papyrus and Schurman, prior to the time that Plaintiff purchased the wrapping paper product, designed, manufactured, constructed, fabricated, tested, inspected, analyzed, recommended, merchandised, marketed, advertised, promoted, sold, prepared and maintained the ground beef product and its component parts which were intended by Defendants Papyrus and Schurman to be used or consumed for all purposes to which such gift wrapping paper products are commonly or foreseeable used or consumed.

95.     Defendants Papyrus and Schurman knew or should have known, that the glitter gift-wrapping paper product was to be purchased and used without prior inspection for defects by the person or persons by whom it was intended to be used.

96.     Defendants Papyrus and Schurman knew or should have known that said glitter gift-wrapping paper were unsafe for their intended and/or foreseeable uses by

reason of the defects in their design, ingredients, components, additives, testing, inspection, and fabrication, as set forth herein, so that injuries to users were foreseeable to occur when the aforementioned products were used in a manner in which they were intended to be used, or in the manner that were foreseeable by folding the gift wrapping paper around an object such as a box—the glitter came off the gift-wrapping paper without difficulty unknowingly to the Plaintiff.

97.    At all times relevant hereto, the glitter gift-wrapping paper product referenced above was defectively designed/processed and was sold and marketed in an unsafe condition, including but not limited, to the following ways: a). the manner the glitter was adhered to the paper; b). the type of glitter used, knowing that consumers will be folding the glitter gift-wrapping paper c). the glitter gift-wrapping paper labels(failed to warn the Plaintiff and other consumers); d). and packaging were defectively designed, manufactured, assembled and/or supplied such that the product caused injury to the Plaintiff due to the glitter coming off of the glitter gift-wrapping paper product which Defendants Papyrus and Schurman employees knew that the glitter would come off easily, but unknown to consumers like the Plaintiff Drake who used the paper product.

98.    The defective design of the glitter gift-wrapping (hereon the glitter gift-wrapping referred to also as GGWP) paper product caused it to pose a danger to an ordinary adult consumer, such as Plaintiff Drake, and could have been fatal to an infant or child that ingested the paper or placed the glittered paper in its mouth.

99.    Furthermore, the risk of danger inherent in the design, construction, and manufacturing of the GGWP and labels of the product outweighed the benefits of the design. Due to the defective design of the manufacturing and labels, the product created a risk of serious injury and/or death to a child. Furthermore, there existed safer alternative designs that were economically feasible for Defendants Papyrus and Schurman by

employing a better manufacturing process that would keep the glitter on the paper. There existed no adverse consequences to Defendants Papyrus and Schurman gift-wrapping paper product, which would result from implementation of an alternate design other than possibly increase cost.

100. The glitter gift-wrapping paper manufactured and sold by Defendants Papyrus and Schurman was not reasonably safe in construction because, at the time that it left the control of Defendants Papyrus and Schurman, the product deviated materially from the design specifications that most paper manufactures of gift wrapping paper allowed in employing glitter on its greeting cards and other gift type of items.

101. Defendants Papyrus and Schurman owed a duty to the Plaintiff to manufacture a product that would not be harmful to him or other consumers.

102. Because the Plaintiff suffered injuries as a direct and proximate result of Defendants Papyrus and Schurman breaches of duty, Defendants Papyrus and Schurman is strictly liable to the Plaintiff for his injuries.

103. As a direct and legal result of the aforementioned defective product, Defendants Papyrus and Schurman are strictly liable in tort for the damages sustained by the Plaintiff as set forth hereinbefore.

104. Defendants Papyrus and Schurman consciously disregarded the rights of others, including but not limited to Plaintiff in that Defendants Papyrus and Schurman consciously, wantonly, recklessly and/or intentionally designed, manufactured, fabricated, produced, tested or failed to test, inspected or failed to inspect, failed to provide suitable warnings and/or instructions, distributed, advertised and marketed the subject GGWP paper product in such a manner that Defendants Papyrus and Schurman knew or should have known, was highly probable that harm would result and that the glitter products, which were dangerous, hazardous, and unsafe for the uses and purposes for which they were designed, marketed, advertised, and promoted. *See* **Exhibit 2**.

## FIFTEENTH CAUSE OF ACTION

**COUNT 15.  FAILURE TO WARN AGAINST DEFENDANTS PAPYRUS AND SCHURMAN**

105.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

106.   Defendants Papyrus and Schurman had a duty to the Plaintiff and to the general public who use their gift-wrapping products to warn of possible danger of danger by using their GGWP and other glitter gift products. An infant or child ingesting the glitter on the GGWP product or getting the glitter in one's eye has been known to cause blindness, and it could cause chocking in infants and smaller children. In fact, a state agency in California has posted a written hazard in using glitter type of products.

107.   At the aforementioned times in this complaint, when Defendants Papyrus and Schurman manufactured, designed, assembled, tested, inspected, maintained, produced, fabricated, analyzed, distributed, prepared, recommended, and promoted the GGWP product that is the subject of this lawsuit as set forth above, the product was defective as a result of Defendants Papyrus and Schurman failure to give a clear, specific, and adequate warning by sign, label, or otherwise as to the dangers of the glitter on their paper products and its component parts, thereby making Defendants Papyrus and Schurman GGWP and other glitter paper products unsafe for their intended purposes.

108.   Plaintiff injuries, harm, damage, detriment, and losses were the direct and proximate result of Defendants Papyrus and Schurman failure to warn, and therefore the Plaintiff is entitled to damages as described herein.

109.     Defendants Papyrus and Schurman are liable to the Plaintiff, because Defendants Papyrus and Schurman: 1). "fail[ed] to exercise reasonable care" and "increase[d] the risk of . . . harm" to the Plaintiff by failing to place warning labels on the GGWP and other glitter products that it manufactures and designs, and or they failed to install signs in their retail stores, warning of 'Possible Hazard in using their glitter Products' or any other notification to the Plaintiff or consumers of possible danger of injury; 2). "the harm is suffered because of reliance of the Plaintiff that Defendants Papyrus and Schurman would take reasonable steps to protect him from injury, which Defendants Papyrus and Schurman failed to do so. The Plaintiff trusted the Defendants Papyrus and Schurman owned retail stores that injured him because of the brand name.

110.     The a risk of harm was undoubtedly inherent to Defendants Papyrus and Schurman because of articles that have been published regarding the dangers of glitter. *See* **Exhibits 2**, and **3**. Defendants Papyrus and Schurman knew or should have known that Plaintiff and the general public was at risk of using their glitter paper products, but put sales came before consumer safety. Insuring the safety of the Plaintiff that the glitter products marketed by Defendants Papyrus and Schurman wasn't a priority. Defendants Papyrus and Schurman was fully aware of the danger prior to the Plaintiffs injury.

111.     Defendants Papyrus and Schurman through its employees failure to place any warning signs on their GGWP or glitter paper products was obvious negligence, thus this was the causative nexus that caused Plaintiffs injury. Since Defendants Papyrus and Schurman provided no warning labels on it glitter paper products of possible injury, consumers like the Plaintiff used Defendants Papyrus and Schurman GGWP (glitter products) unsuspectingly of the danger that existed—therefore, Defendants Papyrus and Schurman are liable for Plaintiffs damages.

112.    Defendants Papyrus and Schurman caused injury to the Plaintiff by failing to take adequate measures and provisions of safety when it knew that there was a probability that injury could be caused by its glitter paper products. There were no signs on Defendants Papyrus and Schurman GGWP glitter paper products warning the Plaintiff of possible injury, as shown on the label of the glitter gift-wrapping paper that injured the Plaintiff as shown in the annexed **Exhibits 4 and 5.**

113.    Defendants Papyrus and Schurman through its employees knew or should have known that their glitter paper products could cause serious injuries to the eyes of its users.

114.    Defendants Papyrus and Schurman are guilty of inadequately warning the Plaintiff as well as others consumers who may use there glitter paper products of potential dangers.

115.    Defendants Papyrus and Schurman failed to employ reasonably safety protections to protect the Plaintiff from injury, by failing to take practical safety provisions of notifying the Plaintiff of possible dangers on the label of the GGWP. The inadequate warnings and lack of warnings of the labels of their GGWP glitter product, and lack of signs in the retail stores to alert the Plaintiff of such danger of being injured was a substantial factor in bringing about the injuries that the Plaintiff sustained.

116.    Defendants Papyrus and Schurman was negligent, careless, and is guilty of other wrongdoings and actions described herein, which caused Plaintiff to suffer injuries and damages as described herein with particularity, as described throughout this compliant.

117.    As a direct and proximate cause of the Defendants Papyrus and Schurman negligence in failing to warn, the Plaintiff suffered extreme pain, and anguish, requiring immediate emergency medical attention.

118.    The Plaintiff was injured when the unknowingly the glitter from the GGWP covered his hands which he purchased from a retail store that sold Defendants Papyrus and Schurman products. Plaintiff reported the incident to the Whole Foods retail store. Defendants Papyrus and Schurman knew or should have known that its gift-wrapping that contained glitter could cause injury to the Plaintiff and other consumers.

119.    Papyrus and Schurman were aware that glitter in their paper product could cause injury to consumers because of published articles of injuries. **Exhibits 4, 5**. Yet, there were no warning labels suggesting to Plaintiff that the glitter might cause injury.

120.    A wholesaler, retailer, or distributor can be held liable in negligence for the sale of a defective product or for failure to warn if it fails to detect a dangerous condition that it could have discovered during the course of a normal inspection while the product was in its possession.[1] The Defendants Papyrus and Schurman failure to provide adequate warning of the dangers of using their product manufactured with glitter (GGWP) allowed Plaintiff to be injured, thus Defendants Papyrus and Schurman were negligence.[2] Legal consequences should be attached to the use of a product when consumers are unaware of the dangers of using such product.

121.    The product (GGWP) in this case is also merchantable, which means "what an ordinary consumer might expect to use." 13 Drake J.

---

[1][A] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being' and that 'liability is not one governed by the law of contract warranties but by the law of strict liability in tort.'" Rivera, Offic. Trans. Slip Op. at 6 (quoting *Greenman*, 377 P.2d at 900-01). "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." *Greenman*, 377 P.2d at 901; see also Mendoza, 97 D.R.R. at 499.

[2]Strict product liability is a legal rule that says a ***seller***, ***distributor*** or manufacturer of a defective product is liable to a person injured by that product regardless of whether the defendant did everything possible to make sure the defect never happened.

121.    This case warrants the strict liability doctrine because of Defendant Defendants Papyrus and Schurman defects for failure to provide suitable instructions or warnings on the label on its glitter paper products. In the case at bar, liability for failure to warn should be imposed because unquestionably Defendants Papyrus and Schurman

*Rivera v. Superior Pkg., Inc.*, 132 P.R. Dec. 115, 127, 1992 Juris P.R. 165.

had knowledge or should have had knowledge that glitter in other paper product previous to the Plaintiffs injury has caused severe injuries in other consumers. *See* **Exhibits 4, 5,** and **3**. Agric. L. at 337. The danger of a consumer losing an eye, or other injuries in itself should have swayed Defendants Papyrus and Schurman to place warning in their stores or labels on their glitter products *"that the glitter on this product could cause blindness or injury to the eyes" "thoroughly wash hands after use."* Plaintiff would not have purchased the GGWP if he were warned that injury might occur from using or handling the product.

122.    There is an implied warranty that Defendants Papyrus and Schurman provides to the Plaintiff and other consumers who purchase their products in retail stores. The doctrine of implied warranty is a derivative of strict liability.[3] The principle of implied warranty as widely described "[i]n most of the states of the Union, is [that] the person who serves or sells a food product for human consumption tacitly warrants that the product is healthy and appropriate for consumption by man." 75 D.P.R. at 73-74.

---

[3][T]he justification for the strict liability has been said to be that the seller, by marketing his product for use or consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed on those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum protection at the hands of someone, and that the proper persons to afford it are those who market the product. Mendoza, 97 D.P.R. at 499 (quoting Section 402A of the Restatement of Torts (Second), Restatement of Torts (Second) (Am. Law Inst. 1965) at 349-50).

123.    At all times material to this action, Defendants Papyrus and Schurman failed to place warnings on their GGWP and other glitter paper product to alert consumers of possible dangers to be careful in using the GGWP glitter product because of possibly injury to consumer's eyes. It wasn't the fact that Defendants Papyrus and Schurman wasn't aware of the dangers of using glitter in their paper products, **Exhibits 4, 5, 6, 7** but Defendants Papyrus and Schurman didn't care about the ramifications of consumers using a product that could cause injury to the end user. Defendants Papyrus and Schurman knew or should have known that employing glitter in their product could cause injury to the Plaintiff and the general public because the glitter would come off in consumers hands, but took no steps to protect the Plaintiff or the public.

124.    Defendants Papyrus and Schurman knew or should have known that the ultimate users or consumers of the GGWP and other glitter paper product would not, and could not have known that the product could cause injury to the Plaintiff. But safety wasn't a concern to Defendants Papyrus and Schurman because the company knew of the potential harm that glitter can cause to the eyes from reports of injuries previous to the Plaintiffs injury that were available to Defendants Papyrus and Schurman online **Exhibits 4, 5, 6, 7**, but Defendants Papyrus and Schurman failed to take adequate measures to prevent his injuries. More specifically, Defendants Papyrus and Schurman were negligent and breached its duty of care in the following non-excluding ways:

      a).    Failing to manufacture GGWP a glitter paper products that was not a danger to consumers such as the Plaintiff;

      b).    Failing to alert the Plaintiff and other consumers that the GGWP and other glitter paper product might cause serious injuries by placing warnings on the label of their paper products that employ glitter. *See* the label of the glitter gift-wrapping paper that injured the Plaintiff, annexed as **Exhibits 3**;

    c).    Failing to place warning signs in or around the retail stores that sold Defendants Papyrus and Schurman GGWP and other glitter paper products alerting consumers that the glitter could cause serious injuries to the eye and other parts of the body. **Exhibit 3**;

    d).    Failing to protect the Plaintiff and public in general from injury;

125.    Defendants Papyrus and Schurman breach of duty proximately caused injury to the Plaintiff, Drake, which resulted in the following damages:

    a).    Actual and future pain and suffering;
    b).    Actual and future mental anguish;
    c).    Physical impairment;
    d).    Medical expenses, past and future.
    e).    And other damages as pled herein.

126.    As a result of the negligent acts and omissions of Defendants Papyrus and Schurman Plaintiff, Drake has suffered the following damages:

    (a)    Medical expenses in the past;
    (b)    Medical expenses that, in reasonable probability, will be incurred in the future;
    (c)    Physical pain and suffering sustained in the past;
    (d)    Physical pain and suffering that, in reasonable probability, will be sustained in the future;
    (e)    Mental anguish sustained in the past;
    (f)    Mental anguish that, in reasonable probability, will be sustained in the future;
    (g)    Physical impairment sustained in the past;
    (h)    Physical impairment that, in reasonable probability, will be sustained in the future;

127.     Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court. Plaintiff also seeks damages for past and future physical pain. Plaintiff seeks damages for past and future mental anguish.

128.     Plaintiff seeks damages in an amount that exceeds $75,000.00 from the above defendants

129.     Plaintiff pleads Exemplary damages. Plaintiff injury resulted from Defendants Papyrus and Schurman gross negligence, which entitle Plaintiff to exemplary damages.

130.     As a direct and proximate result of the injury caused to the Plaintiff, he was seriously injured. Plaintiff requests the following:

a).     A declaration that Defendants Papyrus and Schurman caused the injury made the basis of this lawsuit and that Plaintiff is legally entitled to receive damages from Defendants Papyrus and Schurman;

b).     A declaration of the amount of damages sustained by Plaintiff in the subject injury to include the following:

i)     Reasonable and necessary medical expenses in the past;

ii)     Reasonable and necessary medical expenses that will, in reasonable probability, be incurred in the future;

iii)     Physical pain and suffering sustained in the past;

iv)     Physical pain and suffering that will, in reasonable probability, be sustained in the future;

v)     Mental anguish sustained in the past;

vi)     Mental anguish that will, in reasonable probability, be sustained in the future;

vii)     Physical impairment sustained in the past;

viii)   Physical impairment that will, in reasonable probability, be sustained in the future;

ix)   Pre-judgment interest at the highest rate allowed by law; and

x)   Post-judgment interest at the highest rate allowed by law.

xi)   An award of attorney's fees, taxable court costs and expenses of litigation to Plaintiff for the prosecution of this matter.

c).   **A declaration by the Court that Defendants Papyrus and Schurman will be ordered to put warning labels on their glitter paper products that consumer could be injured if glitter gets in their eyes.**

131.   Upon Plaintiff Eric Drake purchasing the GGWP glitter gift-wrapping paper product from a retail store that carried Defendants Papyrus and Schurman products, he had *no foreseeable notice* that the glitter employed on the wrapping paper would be a danger to him, but the dangers were reasonably foreseeable to Defendants Papyrus and Schurman.

132.   Plaintiff Drake was a foreseeable user of the glitter gift-wrapping paper product that he purchased on or about December 24, 2017, but he wasn't warned that the glitter employed in the gift-wrapping might cause him injury.

133.   As alleged herein, as a direct and proximate result of Defendants Papyrus and Schurman acts and omissions, and the unreasonably dangerous and defective characteristics of glitter employed in the GGWP and their other gift-wrapping paper products that were known to Defendants Papyrus and Schurman, and as a result, Plaintiff Drake suffered severe physical injuries, and mental anguish. Plaintiff has also incurred medical expenses, medical care, and treatment. The Plaintiff seeks actual and punitive damages from Defendants Papyrus and Schurman.

134.    Plaintiff Drake losses were the legal and proximate result of the defects associated with the glitter that was manufactured in Defendants Papyrus and Schurman GGWP and other gift-wrapping paper product which was manufactured, distributed, marketed, or sold by Defendants Papyrus and Schurman including but not limited to Defendants Papyrus and Schurman, failure to provide adequate instructions for use and warnings of the risks of substantial harm associated with the foreseeable use of said products. Plaintiff has suffered physical and emotional damages.

135.    WHEREFORE, Plaintiff, Drake seeks a judgment against Defendants Papyrus and Schurman together with interest for damages, costs and for such other and further relief as this Court deems proper.

## SIXTEENTH CAUSE OF ACTION

**COUNT 16.**   **FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, et seq. (UNFAIR AND FRAUDULENT CONDUCT PRONGS OF THE ACT) AGAINST DEFENDANTS PAPYRUS AND SCHURMAN**

136.   Plaintiff incorporate by reference all other paragraphs in this Complaint as it fully set forth herein and further alleges as follows.

137.   Business and Professions Code § 17200, et seq., prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above and pled herein, Defendants Papyrus and Schurman engaged in unfair, untrue and misleading advertising in violation of Business and Professions Code § 17200.

138.   The Plaintiff is a "person" pursuant to the definitions set forth in Business and Professions Code § 17201.

139.   As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury as a result of Defendants Papyrus and Schurman actions. Specifically, Plaintiff was injured as a result of the glitter paper product as described herein, which glitter paper product was sold to the Plaintiff was misleading labeled because the label failed to state that the glitter gift-wrapping paper product could cause injury to the Plaintiff. If such a warning were on the labeling of Defendants Papyrus and Schurman GGWP products, the Plaintiff would not have purchased or used the product, and neither would any reasonable minded person. In fact, Plaintiff would not have even handled the glitter product of Defendants Papyrus and Schurman, if he had known Defendants Papyrus and Schurman advertising claims omitted the possibility of being injured by the glitter product, which an omittance of fact and by Defendants Papyrus and Schurman advertising this important fact, makes the advertising misleading thus false. *See* **Exhibit 3**

140.    Defendants Papyrus and Schurman concealed and failed to disclose that its GGWP glitter paper product could cause injury to consumers. In ads on its own website, Defendants Papyrus and Schurman never even suggests that glitter could cause injuries to its users.

141.    As alleged in the preceding paragraphs, the acts, omissions, misrepresentations, practices and non-disclosures constitute "unfair" practices within the meaning of California Business & Professions Code § 17200.

142.    Defendants Papyrus and Schurman business practices, as alleged herein, are unfair because: 1). The injury to consumer is substantial; 2). The injury is not outweighed by any countervailing benefits to consumers or competition; and 3). Consumers could not reasonably have avoided the information because Defendants Papyrus and Schurman mislead the consuming public by failing to warn and inform the public of the dangers of glitter. Moreover, there were reasonably available alternatives to further Defendants Papyrus and Schurman legitimate business interests, other than the conduct described herein. (Better manufacturing process of the glitter paper, warnings on the label of the glitter product and or refusal to use glitter).

143.    Defendants Papyrus and Schurman business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that Defendants Papyrus and Schurman glitter paper products are safe to handle and use without harm to the consumer. Defendants Papyrus and Schurman advertisement of their glitter paper products were designed to conceal and not inform the general public of a problem that could and have in other consumers caused severe life changing injuries.

144.    Plaintiff was misled into purchasing Defendants Papyrus and Schurman products by Defendants Papyrus and Schurman deceptive conduct described herein.

Defendants Papyrus and Schurman misrepresentations and omissions were uniform and would be considered material to the average consumer.

145.    There were reasonably available alternatives to further Defendants Papyrus and Schurman legitimate business interests, other than conduct described herein.

146.    All of the conduct alleged herein is continuing to occur in Defendants Papyrus and Schurman business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

## SEVENTEENTH CAUSE OF ACTION

**COUNT 17.    FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, et seq. AGAINST DEFENDANTS PAPYRUS AND SCHURMAN**

147.    Plaintiff incorporate by reference all other paragraphs in this Complaint as it fully set forth herein and further alleges as follows.

148.    As alleged herein, Plaintiff has sanding to pursue this claim as Plaintiff has suffered injury as a result of Defendants Papyrus and Schurman actions. Specifically, Plaintiff was injured due to GGWP product as described herein, which glitter paper product was sold by Defendants Papyrus and Schurman that was misleading labeled because the label failed to state that GGWP product could result in injuries. If such a warning were on the labeling of Defendants Papyrus and Schurman glitter products, the Plaintiff would not have purchased or handled the product, and neither would thousands of other consumers. Plaintiff would not have purchased the GGWP had he known Defendants Papyrus and Schurman advertising claims were false.

149.    Defendants Papyrus and Schurman violated the Business & Professions Code § 17500 by publicly disseminating false, misleading, and unsubstantiated advertisements regarding Papyrus and Schurman GGWP, glitter paper product.

150.   Defendants Papyrus and Schurman false, misleading and unsubstantiated advertisements were disseminated to increase the sales of their products.

151.   Defendants Papyrus and Schurman knew or should have known their advertisements for their glitter paper products were false and misleading. Furthermore, Defendants Papyrus and Schurman publicly disseminated the false and misleading advertising. Even if Defendants Papyrus and Schurman claims that their glitter paper products are safe, it is without question the glitter gift-wrapping paper that the Plaintiff purchased from Whole Foods was not safe. The Plaintiff have in his possession a large piece of the actual GGWP paper that caused him injury for his the jury to inspect. This evidence has been under the control and possession of the Plaintiff at all times.

152.   Plaintiff has suffered harm as a result of because Defendants Papyrus and Schurman false and misleading advertisements induced him to purchase a product, which ultimately caused severe injuries to the Plaintiff.

## EIGHTEENTH CAUSE OF ACTION

**COUNT 18.   BREACH OF IMPLIED WARRANTY OF MERCHANTABLITY AND DUTIES AGAINST DEFENDANTS PAPYRUS AND SCHURMAN**

153.   Plaintiff incorporate by reference all other paragraphs in this Complaint as it fully set forth herein and further alleges as follows.

154.   Defendants Papyrus and Schurman were negligent because glitter paper products have been known to have caused injuries to consumers.

155.   Even though there were no prior warnings of danger of possible injury on Defendants Papyrus and Schurman glitter paper product label sold, distributed, wholesaled, or produced by Defendants Papyrus and Schurman, pursuant to federal law, there is an implied warranty to all of its customers, including the Plaintiff, who use such products. The doctrine of implied warranty is a derivative of strict liability. As seen on the package labeling, there were no warnings to consumers that the glitter on the gift-wrapping paper product could cause injury. *See* **Exhibit 2.**

156.   The implied warranty of merchantability requires that the product and its container meet certain minimum standards of quality, chiefly that the product be fit for the ordinary purposes for which such goods are sold (U.C.C. § 2-314). This requirement includes a standard of reasonable safety. Plaintiff relied on Defendants Papyrus and Schurman skills or judgment to manufacture gift-wrapping paper that would be safe to fold and use as intended—subsequently, there is an implied warranty that the goods shall be reasonably fit for such purpose."

157.    At the time that Defendants Papyrus and Schurman manufactured, marketed, distributed, supplied, retailed, and/or sold their glitter paper products to the Plaintiff and other consumers, they knew or should have known that there were a probability that their glitter gift-wrapping paper products could cause injuries to consumers.

158.    Defendants Papyrus and Schurman intended and impliedly warrant its paper and gift product to be free from defects, and or harmful elements, that could cause injury to its users or consumers when using the product for its intended purposes. Defendants Papyrus and Schurman at all times relevant had reason to believe that the GGWP product in question could cause injury if the glitter got into a consumer's eye. The GGWP wasn't fit for its intended purpose by the general public and therefore a violation of (U.C.C. § 2-315).

159.    The glitter gift-wrapping paper product not having the proper label wasn't an oversight, but an intentional act committed by Defendants Papyrus and Schurman to lure consumers into buying its gift-wrapping paper products---knowing that their glitter products had the full potential to cause injury to the Plaintiff and others who use it for its intended purposes.

160.    Plaintiff Drake was an intended user of the GGWP glitter paper products manufactured, sold, and marketed by Defendants Papyrus and Schurman. And it was common knowledge by Defendants Papyrus and Schurman that glitter in paper products have caused injuries to consumers prior to Plaintiff Drake's injury.

161.    Due to Defendants Papyrus and Schurman wrongful conduct as alleged herein, Plaintiff Drake could not have known about the nature of the risks and possible harm in using Defendants Papyrus and Schurman GGWP glitter gift-wrapping paper product until he used the product which resulted in injury to the Plaintiffs eyes.

43

162.    Contrary to any arguments that glitter in gift-wrapping paper products wasn't known to Defendants Papyrus and Schurman, there have been published articles on injuries to consumers who have sustained life-altering injuries, lost of an eye and or blindness as a result of using glitter. *See* **Exhibit 4**. Of course, if consumers were aware of this problem, they would not buy glitter gift-wrapping paper products because the value of this type of gift-wrapping paper does not out weigh the danger in using the paper product. Defendants Papyrus and Schurman knew or should have known that their gift-wrapping glitter paper products had the potential to cause him to Plaintiff and other consumers. Because Defendants Papyrus and Schurman failed to place any warnings on its glitter gift-wrapping paper products label packaging warning Plaintiff that the product wasn't safe or fit for their intended use and purpose, thus the Defendants Papyrus and Schurman was negligent and gross negligent.

163.    As alleged herein, as a direct and proximate result of Defendants Papyrus and Schurman breached their warranties and duties. Defendants Papyrus and Schurman acts and omissions, and the unreasonably dangerous and defective characteristics of their gift-wrapping glitter paper product caused the Plaintiff to be harmed, suffer continually severe physical injuries, and emotional distress.

164.    Plaintiff Eric Drake has incurred medical expenses and care and treatment. The Plaintiff seeks actual and punitive damages from Defendants Papyrus and Schurman as alleged herein.

## NINETEENTH CAUSE OF ACTION

## COUNT 19.    NEGLIGENCE — PAPYRUS AND SCHURMAN

165.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

166.   Defendants Papyrus and Schurman owed a duty to the Plaintiff to use reasonable diligence in protecting him and the general public from injury.

167.   Plaintiff's injuries and damages were proximately caused by the negligent conduct of Defendants Papyrus and Schurman. Defendants Papyrus and Schurman negligent acts and/or omissions are generally described above and include, but are not limited to, failing to properly inspect the glitter gift-wrapping paper product that injured Plaintiff before placing said GGWP glitter paper product on the market for the Plaintiff to purchase, handle, and use, and failing to place warning signs on the glitter product to inspect closely prior to use of the GGWP product because the glitter could cause eye injury, and have caused eye injury to others.

168.   The glitter gift-wrapping paper product that Defendants Papyrus and Schurman manufactured, distributed, marketed, and sold was not reasonably safe because adequate warnings or instructions were not provided on the packaging including, but not limited to, a warning that the gift-wrapping paper product contained foreign objects (glitter) and that consumers should be careful not to get the glitter in consumers eyes.

169.   Defendants Papyrus and Schurman breached this duty and were therefore negligent.

170.   Defendants Papyrus and Schurman owed the plaintiff a duty to use reasonable care in the manufacture, distribution, and sale of its product to prevent bodily injury.

171.   Defendants Papyrus and Schurman breached this duty and was therefore negligent in failing to exercise reasonable care in the manufacture of the product to prevent physical injuries of consumers who uses the product.

172.   Defendants Papyrus and Schurman its employees, employees, agents, and representatives were negligent of one or more of the following negligent acts and/or omissions:

    a).   Defendants Papyrus and Schurman failing to alert the Plaintiff and other consumers that the glitter gift-wrapping paper product that they sold to the Plaintiff and other consumers was in fact not safe for its intended use;

b).     Defendants Papyrus and Schurman retailers failed to be truthful and honest with the Plaintiff, and that Whole Foods would pay for all damages relating to his injury relating to the glitter gift-wrapping paper product that caused injury to the Plaintiffs eye;

f).     Defendants Papyrus and Schurman failed to employ warning signs on the labels of the GGWP glitter gift-wrapping paper products of potential danger of possibly injury to consumers that used the GGWP glitter gift-wrapping product on its label, as well as signs in their retail stores that is clearly visible warning consumers of possible injury before releasing the GGWP glitter gift-wrapping paper product on the market in retail stores and ultimately to the Plaintiff and the general public to consume.

173.    Plaintiff is entitled to compensation as a result of Defendants Papyrus and Schurman representatives, and or negligence.

174.    Moreover, the principle of *res ipsa loquitur* applies in the Plaintiff claim against Defendants Papyrus and Schurman representatives and employees negligence causing the Plaintiff damages. Plaintiff is entitled to the doctrine of *res ipsa loquitur* "if the evidence affords a rational basis upon which the jury can conclude that the elements of the doctrine required under state substantive law are present." *Id*.

175.    Each of these acts and omissions by Defendants Papyrus and Schurman representatives, and employees singularly or in combination with others, constituted negligence, which proximately caused Plaintiff's damages. Plaintiff has suffered greatly and asks this Court for Exemplary damages against Defendants Papyrus and Schurman representatives, and employees as well as interest, and court cost.

176.    Plaintiff is entitled to compensation for Defendants Papyrus and Schurman negligent conduct as described herein. Defendants Papyrus and Schurman knowingly caused Plaintiff to be injured as pled herein. As a consumer, the Plaintiff had not anticipated that using the GGWP gift-wrapping paper would injure him, thus the reasonably anticipated standard is not applicable. Plaintiff pleads special and exemplary damages against Defendants Papyrus and Schurman for knowingly with intent causing the injuries that the Plaintiff sustained on or about December 24, 2017. Each of these acts and omissions by the Defendants Papyrus and Schurman, singularly or in combination with others, constituted negligence, which proximately caused Plaintiff's extensive injuries and damages.

177.    WHEREFORE, Plaintiff, Drake seeks a judgment against Defendants Papyrus and Schurman representatives, and employees together with interest for damages, costs and for such other and further relief as this Court deems proper.

## TWENTIETH CAUSE OF ACTION

**COUNT 20.   RESPONDEAT SUPERIOR DEFENDANTS PAPYRUS/SCHURMAN**

178.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

179.    When viewed objectively, Defendants Papyrus and Schurman conduct, acts and/or omissions described above involved conduct that put the Plaintiff and other consumers at risk of injury, considering the probability and magnitude of potential harm to others. Defendant Defendants Papyrus and Schurman employees and representative had or should have had actual, subjective awareness that there have been consumers who have been injured by glitter.

180.    Defendant Defendants Papyrus and Schurman conduct rises to the level of gross negligence. Accordingly, Plaintiff is entitled to a finding that Defendants Papyrus and Schurman, its agents, and representatives were grossly negligent in releasing gift-wrapping paper that employed glitter without notifying the Plaintiff and other consumers of the risk of using said glitter gift-wrapping paper by employing such warnings on the label of the GGWP or by having signs or some type of warnings in the retail stores or at least online for the Plaintiff and other consumers to be informed. "Respondeat superior is based on a 'deeply rooted sentiment' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208 [285 Cal.Rptr. 99, 814 P.2d 1341]. Defendant Schurman is vicariously liable for all negligent and grossly negligent acts and/or omissions alleged herein to have been perpetrated by its employees.

## TWENTY-FIRST CAUSE OF ACTION

**COUNT 21.    DECEPTIVE AND UNFAIR TRADE PRACTICES
DEFENDANTS PAPYRUS AND SCHULMER**

181.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

182.    Pursuant to California state and federal laws, Plaintiff pleads a cause of action against Defendants Papyrus and Schurman its agents, representatives, retailers and partners for deceptive and unfair trade practices.

183.    The Plaintiff is a 'consumer' as defined under the California's Code Ann. §§ Cal. Bus. & Prof. Code §§ 17200 through 17594, Fair Business Practices Act. Plaintiff sought a creative looking gift-wrapping paper for Christmas gifts of 2017. Unknowingly to the Plaintiff, Defendants Papyrus and Schurman through its employees, agents, partners, and retailers engaged in acts or practices declared unlawful by Cal. Bus. & Prof. Code §§ 17200 through 17594, and Cal. Civ. Code §§ 1750 through 1785. Plaintiff further shows as follows:

a.  Defendants Papyrus and Schurman, its partners, agents, and its representative's actions were deceptive when they failed to disclose to the Plaintiff and other consumers that their glitter gift-wrapping paper could cause serious injury. Defendants Papyrus and Schurman knew or should have known that glitter have injured consumers severely—including causing blindness. *See* **Exhibit 5**. Thus, Papyrus and Schurman are guilty of an 'Unconscionable Action,' of exposing Drake and other consumers to such risks for profit. This type of action is a violation under "California Code" § 17202, and Cal. Civ. Code § 1780 allows for damages.

49

b. The actions of Defendants Papyrus and Schurman, its partners, agents, employees, retailers, and representatives were unfair and deceptive practices and evasive against the Plaintiff, which caused the Plaintiff injuries through their reckless, intentional, and negligent conduct of failing to warn consumers like the Plaintiff of the real dangers of handling, folding, and using its glitter gift-wrapping paper. Defendants Papyrus and Schurman breached its reasonable care for Plaintiffs safety. The breach was a producing cause of the Plaintiffs damages. In fact, "[e]ven a truthful statement may be deceptive if it has a capacity or tendency to deceive."

c. Cal. Bus. & Prof. Code § 17200 broadly prohibits unfair and deceptive practices "in the conduct of" a consumer transaction, which is defined as "the sale, purchase, lease, or rental of goods, *services*, or property, real or personal, primarily for *personal*, family, or household purposes." The court in, *Garner v. Academy Collection Service, Inc.*, 2005 WL 643680, held that issuance of a credit card was a consumer transaction because it involved the sale and purchase of a *service*, i.e. the extension of credit.

d. False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under the federal statute: Federal Trade Commission Act 15 U.S.C. §§ 41-58.

## FEDERAL UNFAIR AND DECEPTIVE TRADE PRACTICES

e. Defendants Papyrus and Schurman also violated Federal Trade Commission Act (FTC Act) (15 USC §45) Section 5, [5(a)] because Defendants Papyrus and Schurman conduct could and have affected consumers nationwide.

1. Having gift-wrapping paper that employ glitter, which could cause blindness was likely to cause substantial injury to the Plaintiff and other consumers.

2. Injury to consumers cannot be reasonably avoided because Defendants Papyrus and Schurman through its employees, partners, and retailers are willing to risk injury to consumers nationwide for profit;

3.       Since Defendants Papyrus and Schurman is willing to be untruthful to consumers, its misleading representations, omissions, and practices are material.

5.       Defendants Papyrus and Schurman conduct is not outweighed by the countervailing benefits to consumers.

184.     Again under the deceptive trade practices acts, an unfair or deceptive acts or practices, the Plaintiff do not have to show or prove that a claim or representation was intended to deceive, the Plaintiff only need to present to the Court that Defendants Papyrus and Schurman and its management, agents, employees, partners, retailers, or representatives actions had the capacity or tendency to deceive. However, in this case, the Plaintiff can show the Court that Defendants Papyrus and Schurman intended purpose was to deceive not only Drake, but also unsuspecting other consumers that the glitter gift-wrapping paper was safe, when it was not safe to use. The capacity to deceive can be found without a finding that anyone has actually been deceived:

a).      Plaintiff only has to establish that an act or practice is unfair or deceptive;

b).      Plaintiff must demonstrate that the practice has an impact upon public interest.

185.     It was a deceptive act or practice for Defendants Papyrus and Schurman, its partners, agents, its employees, retailers, and or its representatives to violate federal and or state laws.

a).      By all the ways pled herein in this original petition;

b).      By Defendants Papyrus and Schurman violating federal and state civil laws.

186.     The above-described actions were committed by Defendants Papyrus and Schurman willfully, wantonly and with reckless disregard for the rights of Plaintiff.

<u>TWNETY-SECOND CAUSE OF ACTION</u>

**COUNT 22.   <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
DEFENDANTS PAPYRUS/SCHULMER AND GALLAGHER
BASSETT</u>**

187.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

188.   Defendants GALLAGHER BASSETT through its employees and agents caused intentional infliction of emotional distress upon the Plaintiff. Defendant GALLAGHER BASSETT, through its employees and agents were fully aware that the company did not have a contract with Papyrus to settle or manage its claims. That Defendant GALLAGHER BASSETT plotting to deny Drake access to federal courts. This action of Gallagher Bassett was carried out against Plaintiff on account of his race, African American. Defendants Papyrus and Schulmer caused intentional infliction of emotional distress by marketing GGWP that the company knew or should have known could cause severe injuries, including blindness. Defendants Gallagher Bassett, Papyrus and Schulmer conduct was intentional and reckless and it caused intentional infliction of emotional distress by:

a).   Defendant GALLAGHER BASSETT extreme and outrageous conduct in demanding that the Plaintiff sign a release which included the company, Papyrus, who manufactured the gift-wrapping paper that caused the Plaintiff injuries, though GALLAGHER BASSETT had no authority to represent, manage Papyrus claims or authority to settle claims on behalf of Papyrus;

b).    Defendants GALLAGHER BASSETT extreme and outrageous conduct went beyond all possible bounds of decency. For the actions of GALLAGHER BASSETT was intended to, and did in fact cause the Plaintiff emotional distress.

c).    Defendants Papyrus and Schulmer extreme and outrageous conduct went beyond all possible bounds of decency when it exposed children and adults to the real possibility of being injured. It was emotionally disturbing that Defendants Papyrus and Schurman allowed its gift-wrapping paper with glitter to be placed on the market for sale when Defendants Papyrus and Schurman knew or should have known that glitter has caused consumers to go blind.

189.    Defendants GALLAGHER BASSETT, PAPYRUS and SCHULMER extreme, outrageous, negligent conduct through its employees was a proximate cause of the Plaintiff's emotional distress, injuries, and damages as set forth herein.

190.    To sustain an award of punitive damages, Plaintiff must prove, by a preponderance of the evidence, that the Defendant committed a tortious act, and by clear and convincing evidence that the act was accompanied by conduct and a state of mind evincing malice or its equivalent. Since Defendant GALLAGHER BASSETT through its employees knew that GALLAGHER BASSETT violated Drake's constitutional rights to sue pursuant to 42 USC §1981, Gallagher Bassett was aware of their actions.

191.    Defendant GALLAGHER BASSETT through its employees and agents actions were to obviously rob the Plaintiff of his proper compensation relating to the incident described in this petition for damages. GALLAGHER BASSETT goal was to

deprive the Plaintiff of any compensation. Therefore, the Plaintiff is requesting punitive damages for the emotional distress that the Defendants caused with an intent to harm the Plaintiff by the Defendant GALLAGHER BASSETT.

## DAMAGES

192.    As a direct and proximate result of GALLAGHER BASSETT, PAPYRUS and SCHULMER conduct, Plaintiff has suffered damages.

193.    Plaintiff has suffered and is continuing to suffer mental anguish on account of Defendant GALLAGHER BASSETT and Defendants Papyrus and Schurman actions and conduct as pled herein. Plaintiff is seeking an order from this Court decreeing that Defendants will pay the Plaintiff damages as set forth herein in this original petition of $250,000.00.

194.    In addition, Plaintiff by this action, seeks compensatory and punitive damages as pled herein, expert witness fees, cost, interest, and other causes of actions pled herein and for all other monies and damages to which he may be entitled and:

- Attorneys' fees for preparation and trial;
- Attorneys' fees if there is to be an appeal to the Seventh Court of Appeals;
- Attorneys' fees if there is to be an appeal to the U.S. Supreme Court;
- Incidental damages;
- Past mental anguish;
- Future and past emotional distress;
  1. Trebled damages for knowingly and willfully causing harm to the Plaintiff;
  2. Plaintiff respectfully requests that the Court grant additional damages as already pled herein and for declaratory judgment and other causes pled herein.

54

## ATTORNEYS' FEES, COSTS & INTEREST

195.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

196.   Plaintiff hereby sues for the recovery of reasonable attorneys' fees, costs of court and pre-and post-judgment interest at the highest rates to which he is entitled.

## REQUEST FOR JURY TRIAL

196.   Plaintiff hereby requests a jury trial on all matters set forth in his original petition as pled to this Honorable Court.

## PARYER FOR RELIEF

197.   Plaintiff prays for a judgment against Defendant GALLAGHER BASSETT and Defendants Papyrus and Schurman it agents, employees, retailers, and representatives and each of them as follows:

1.   Special damages for Plaintiff in the amount of $250,000.00 against Gallagher Bassett;

2.   General damages for Plaintiff in an amount to be determined at trial;

3.   Punitive Damages in an amount to be determined at trial;

4.   Cost of suit;

5.   Attorney fees for preparation and trial;

6.      Attorney fees if there is to be an appeal to the U.S. Supreme Court;

7.      Incidental damages;

8.      Past and future emotional distress;

9.      Trebled damages for willfully causing harm to the Plaintiff;

10.      Prejudgment interest;

11.      Injunctive and Declaratory Relief;

12.      For such other and further relief as the court deems just and proper.

## PRAYER

198.      WHEREFORE PREMISES CONSIDERED, Plaintiff hereby prays that he is awarded compensatory damages, reasonable attorneys' fees, costs of court and pre-judgment and post-judgment interest at the highest rates to which he is entitled to receive; and for such other proper relief to which Plaintiff is entitled. And grant such other and further relief as the Plaintiff as prayed for in its entirety and as it appears reasonable and just, to which Plaintiff shows himself entitled.

Respectfully submitted,

E.V. Drake
P.O. Box 20084
St Simons Island, Georgia 30318
912-281-7100
legal.litigation.org@gmail.com